May it please the Court, my name is Linda Dominguez and I'm here on behalf of the petitioner appellant, Wildon Manfredo Aquino Cordova. Mr. Aquino is a native and citizen of El Salvador who last entered the United States on July 10, 2010. He filed applications for asylum, withholding of removal, and protection under the Convention Against Torture on February 22, 2011 before the Immigration Court and is therefore statutorily eligible to apply for those forms of relief. Mr. Aquino, and I refer to him as Mr. Aquino because in the Latino form of surnames, his last name is actually Aquino Cordova instead of Cordova the way it is on the Court's docket. Mr. Aquino is a 25-year-old married man whose wife and child are citizens of the United States. He has no criminal history that renders him- Can I ask you on that point? Yes, Your Honor. Instead of petitioning for review, why didn't he petition for re- why didn't he move to reopen his removal proceedings based on his change of status? Because the application, it was beyond the 90 days. He married, right? Right. So on the basis of that and is married to a United States citizen and has United States citizen children- He has one- But he's never petitioned for review on that basis? Because he entered the United States without proper papers. He did not enter with a visa. He entered without inspection, so therefore under the law, he is not eligible for adjustment of status in the United States to lawful permanent residence based on his marriage to a citizen. So moving to reopen would have been not worthwhile because it would not have gained him anything. He has no criminal history that renders him removable from the United States and the Immigration Court demonstrated an unreasonable bias against him by stating in its decision that, and I quote, apparently- Respondent apparently has had some problems with the law himself here in the United States. He was not asked if he were a gang member, so that did not come out in a testament. Clearly, these statements indicate that the Immigration Court believed he is a member of a gang and that this line of inquiry was simply not addressed by the government attorney. Mr. Aquino demonstrated through his own testimony that of his witness and the written statements of family members as well as other documentation submitted to evidence that the males in his family have been killed, threatened, and beaten by the MS-13 in an effort to retaliate against the family members who were- Against the family members who were members of a rival gang, the 18th Street Gang. Mr. Aquino's gender is an immutable trait as is his membership in his family. Both the Immigration Court and the Board of Immigration Appeals mischaracterized his testimony concerning the attacks he suffered while residing in El Salvador, expressing astonishment that a person could escape being hit by those with guns. However, there is no evidence submitted by the government that MS-13 gang members are expert marksmen who hit what they shoot at every time. Indeed, the MS-13 are notorious for the use of machetes to hack their victims to death. The Immigration Court also stated in its decision that it was denying relief under the Convention Against Torture because the Department of State Country Court states, and I quote, reflects that there is a problem with gangs in El Salvador, but it also reflects that the government takes a tough stand on gangs in El Salvador. If one does not provide information to the government, such as being shot at on multiple occasions and having allegedly identified the people who shot at him, then it is unreasonable that the government would be accused of taking no action to prosecute criminal action. And that's found at AR-125. In fact, Mr. Aquino did report several of the attacks he suffered to the police, but nothing was done. In fact, he was told at one point, just stay in your house. Just don't leave the house and you'll be fine. That's... How is it that you, how do you characterize the particular social group of which Mr. Aquino is a part? I characterize him as a member of a particular social group that consists of family members of those who have been killed because of their opposition to criminal gangs in El Salvador. Well, not necessarily in El Salvador, but criminal gangs. So not just Mr. Aquino's particular family, but anybody who has been targeted for not being a part of a gang? Not necessarily, but he has... Excuse me. Family relationship is, you said originally, I don't want you to kind of get lost. Yes, Your Honor. Because you're so familiar with the facts, and so we're not quite as familiar. But as I understand it, familial relationship to somebody who is targeted by a gang and is himself targeted is your group.  Is that correct? Yes, Your Honor. So you do have to have that familial relationship. That's correct, Your Honor. I would draw a correlation to the court's decision in Crespin Valladares v. Holder, 632 F. 3rd, 117, where this court found that a native of El Salvador whose cousin had been shot by MS-13 gang members in 2004 had demonstrated eligibility for asylum as a member of a particular social group, being family members of the... He testified. Right, he testified. No, he didn't testify. He was a family member of somebody who testified. Correct. I think that's the case. But the court did note at 633 F. 3rd at 127 that Crespin Valladares had demonstrated he was a victim of, quote, a series of targeted and persistent threats directed at him and his family and not just a fear of the general criminal activities of MS-13. I would submit that Mr. Aquino in this case also has been the victim of a series of targeted and persistent threats directed at him because of his relationship to his uncle and his cousin. What's the evidence that you say supports that? There's several of the events that he lists where before there could have been any contact with a family member. It's only the last two instances that have this nexus, isn't that correct? The two that immediately preceded his leaving the country. That's correct, Your Honor. Where he is with his cousin, I think it is. Right. And his testimony is that they are saying, we know you and we know your cousin and we know your cousin is a member of a rival gang and we are therefore after you and your cousin. And the cousin was actually killed. But not at that exact moment, but later. And his uncle also killed. That's correct, Your Honor. But your first two instances that you talk about, Judge Agee, is quite right. They don't have, there isn't the nexus with the cousin, the familiar relationship, et cetera. That's not part of that story. No, Your Honor. Those instances. I would note, in fact, Mr. Aquino reported several attacks, I'm sorry, let's see. The Department of State country report for 2010 included in the record of this case states that, quote, gang activities in prisons and juvenile holding facilities remained a serious problem. Of the total population in detention center facilities, 8,406 adults and 394 juvenile inmates were current or former gang members. Gang members were separated from the regular prison population when possible. Gangs continue to exercise influence within the prisons and the judicial system, and that's found at AR-276. Thus, the immigration court erred in finding that the government of El Salvador is taking a tough stand on gang activities when it is clear that the gangs continue to operate and do so even from within the prison system. Mr. Aquino submits that the incidents of being shot at by MS-13 members and being beaten up constitute a series of targeted and directed threats against him as a male family member of his uncle and cousin who were members of a rival gang of the MS-13. These attacks rise to the level of past persecution, and he possesses a reasonable fear of future persecution by the MS-13 should he return to El Salvador. Is he in any different position at the time when he happened to encounter his cousin? If instead of it being his cousin, it was his friend from school, and so that friend from school was a member of this other gang, and because of his association, his presence at the same time with this friend who was another gang member, the MS-13 folks started after him. Would that be a protected group? I would not agree that that would be because you can disassociate yourself from the friend and just not see that friend anymore, but you can't exactly disassociate yourself from family members. So it's your position that the distinguishing factor here is he was pursued at a certain point only because he was related to the cousin? And the uncle. Yes, Your Honor. That's his testimony. Yes, Your Honor. The Department of State has consistently reported that the officials of El Salvador are unable and unwilling to control the actions of gang members. And indeed, there's evidence that gang leaders coordinate actions from their prison cells and order hitmen to kill targets to prevent testimony or in revenge for prior testimony. And this was addressed by the court in Crispin Valladares. Thus, assuming Mr. Aquino were able to get the officials to act against those seeking to harm him, he would not be safe since the criminal gang leaders operate from within prison walls to continue their criminal activities. The Fourth Circuit most recently spoke on the issue of eligibility for asylum as a member of a particular social group in Martinez v. Holder on January 23, 2014. In that case, the court found that a former MS-13 gang member met the definition of a member of a particular social group for purposes of asylum in the United States. Indeed, the court found that the social group he has identified is defined by rejection of gang membership and its attendant violence. Martinez asserts that his repudiation of gang membership along with its violence and criminality is a critical aspect of his conscience that he should not be forced to change. Accordingly, Mr. Aquino respectfully requests that this court grant the petition for review and remand the case to the Board of Immigration Appeals to enter an order granting him asylum as a member of a particular social group as demonstrated a well-founded fear of future persecution as well as past persecution. The court has no other questions. I'd like to reserve some time. Thank you very much. Thank you. May it please the Court, Anna Nelson for the respondent, Attorney General. In this case, the agency gave full and fair consideration to petitioner's claims and found that he failed to meet his burden of proof of establishing eligibility on two separate and dispositive grounds. The first is his membership in a cognizable particular social group. Well, maybe we can just pursue Judge Ehmeyer's opinion, I don't know, six months ago, saying that former gang members are a cognizable group. If that is the case, and that's the law of the circuit, I don't understand how you couldn't say that this individual who asserts that he is targeted because he is related to a person targeted by gang members and is himself targeted by gang members is not in a recognizable group. In Martinez, the court recognized that former gang members were cognizable because it was immutable, and it would be... How is that immutable? I can't tell if anybody in this room is a former gang member. I mean, I don't understand how it's more immutable than the individual we have here. I would have thought the government would concede the argument, at least for purposes of this court in this case, given our January opinion. And I would just note that the decision also notes that current gang membership would probably not be a particular social group. So to the extent, because someone could, the immutable part... So you mean if he had said that he was targeted because of the former membership of his cousin, that that would be sufficient? But it's not because they are presently targeting... I really just don't understand the government's argument. Right, well... It seems to me as a much stronger case than the individual in our earlier opinion about immutability. Right, and it's, I mean, his claim isn't based on former gang membership. Oh. And Martinez was considering particular social group and the things that make it... We've already said, and every other circuit has also said, that familial relationship is a discernible group. So he's got that. Correct. Why don't you just assume, for purposes of argument, that that's the case and then move on? Sure, and the agency did do an alternative finding, even if it was a particular social group. He also did not establish that the gangs targeted him on account of his proposed particular social group, which was family membership of someone who's assumed to be a rival gang member. And this, in order for the court to reverse the agency's decision, the record evidence must compel the opposite conclusion. It must compel... Well, not if we conclude that the ALJ or the immigration judge has misstated or misread the facts. I mean, the immigration judge didn't even have the correct group down. And the agency, the board, corrected that without acknowledging that they were doing so. I mean, the government may win here. It just seems to me that the administrative proceedings were kind of a mess. And I'm actually surprised that you haven't just said that to the board. Let's do this one over. It's because the nexus finding and the board especially relied on all of the precedent before it by itself, by its own decisions, that his claims, his evidence, shows that the gangs were targeting him likely based on retribution, on recruitment, even on retaliation for being in a rival gang. And there's precedent that has established that that isn't... We're not denying that he was harmed. But Congress made the asylum laws that that harm needs to be on account of a protected ground. And the board has found all of these different reasons for harm by gang members isn't on account of a protected ground. And the record evidence... Well, there are two incidents which had nothing to do with his relationship with his cousin. But the other two instances that immediately preceded his leaving the country, according to his testimony, which the agency does not properly recount, but according to his testimony, it was because of the kinship. Right. And according to his testimony... The immigration judge's adverse credibility finding was based on shooting and the context of it. And I can address the adverse credibility finding if that's what you're referring to, but I actually think it doesn't matter for the nexus finding. The agency did acknowledge that he was at least harmed and beaten. But I thought you were going beyond the judge's suggestion. You were making your argument even if they're wrong on nexus, even if there is a nexus here. Even if there is a particular social group, there is no nexus. Those are the two dispositive grounds that he has to show that there is a particular social group. And even if we assume that familial relationship is a cognizable group, he still has not shown that gangs targeted him on account of that group, or that that particular group that he identified that we're assuming is a group, that that was one central reason, which is the Immigration and Nationality Act's requirement, was one central reason that the gangs targeted him, which means... So your argument is that the nexus finding to the social group is a factual finding? Correct. So the standard of review is what controls, that's your argument? Correct. And so the record... Then I guess your argument is that this is general gang violence, right? Okay, so what would the government concede would be specific targeting? Because it seems to me that this is pretty specific. I mean, his very cousin that he's with was ultimately killed. An uncle was killed. And he says that he not only was the cousin shot at at the time, but they were threatening him at the same time because of it. So that sounds pretty specific. Right. And you're saying it's not, it's just general gang violence. And I can, I'll come back to that, but to answer your question of what an example would be, in Crespen this court found that, it found both the particular social group and the nexus finding, but those were family members who had testified against gang members. But what I'm trying to do is to have you spin out for me in this case. If this isn't specific targeting, what is? It, and I would argue that it's not specific targeting. The two instances where he was with, well, one instance he was with his cousin. And it takes some speculation. There were gang members that were running after them and shooting them. They did yell, we're MS-13, we're going to get you. But that in itself, it takes, you could say, well, they're targeting him because his cousin's a gang member. But there's actually nothing in the record that would compel the reversal of that conclusion, that the court or fact finder couldn't find any other way. And the second event where they were shooting at his house and they also yelled, we know who you and your cousin are. We are going to kill you. That also, again, you can speculate and assume that, well, it's because his cousin is a gang member and he knows this, but there's really nothing in the record, again, that compels that conclusion, that that is why they were shooting in his house that day. And that it couldn't be for retaliation or retribution or recruitment or any of the other grounds that wouldn't be a protected ground. And are there any other questions by the court? No, thank you. Thank you very much. Do you have rebuttal? You don't have to. I don't think I do, Your Honor. All right. Thank you very much. We will come down and listen. Do you have any questions?
judges: Diana Gribbon Motz, G. Steven Agee, Stephanie D. Thacker